IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-99-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| EDGAR JAJUAN ROBERTS, | |
| Defendant. | |

Before the Court is Defendant Edgar Jajuan Roberts' Motion to Suppress. (Doc. 20). Roberts is charged with possession with the intent to distribute fentanyl in violation of 21 U.S.C. § 841(a) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (Doc. 9). Roberts seeks to suppress the evidence obtained from his search and subsequent arrest on July 3, 2024. (Doc. 23 at 2). Roberts argues that the evidence seized must be suppressed because the *Terry* stop and subsequent seizure of his bags violated the Fourth Amendment, and any evidence subsequently found is subject to the exclusionary rule. (*Id.* at 15–18). The Government responded on October 30, 2024 (Doc. 29), and Roberts replied on November 6, 2024. (Doc. 31). A suppression hearing was held on November 13, 2024, during which Billings Police Department Officers Beechie and Fjetland testified. (Doc. 35). The Court finds the material facts are not

1

disputed based on the parties' briefing, the officers' reports, body cam videos, and the officers' testimony.

For the reasons stated below, the Court grants Roberts' motion.

## I.   Background

On April 10, 2024, Officer Beechie observed Derek Fleming walking west on the south sidewalk of Midland Road. (Doc. 23 at 4; Doc. 22-1 at 9). Fleming was walking with an African American male, Edgar Roberts. (Doc. 23 at 4.). Officer Beechie knew that Fleming had an active arrest warrant and had received information that Fleming was trying to obtain a firearm. (*Id.*). Officer Beechie approached Fleming, and he fled on foot. (*Id.*). Officer Beechie then detained Roberts in handcuffs based on his observation of Roberts associating with Fleming before he fled. (Doc. 22-1 at 9). Roberts had a small black leather backpack which Officer Beechie seized. (*Id.*). K9 Officer Best responded to Officer Beechie's location and ran his K9 over the backpack to check for narcotics. (*Id.*). The K9 did not alert to the presence of narcotics and Roberts was released. (*Id.*).

Throughout 2024 a confidential informant (Informant #240627) told Officer Fjetland that an African American male named "Chris" was selling drugs. (*Id.* at 6). Specifically, that "Chris" lived in the apartments across from the skate park, sold drugs at the skate park, and kept his drugs in a black satchel type bag. (*Id.*). Members of the Billings Police Street Crime Unit ("SCU") identified "Chris" as

Edgar Jajuan Roberts based on Officer Beechie's previous encounter with Derek Fleming and Roberts. (*Id.*).

On July 3, 2024, the informant told Officer Fjetland that Roberts had moved into the apartments behind the Garfield School. (*Id.*). Officer Fjetland then drove towards the Garfield School to identify Roberts' whereabouts. (*Id.*). He observed a black male walking eastbound on 2nd Ave. S., wearing a black backpack on his back and a black satchel bag on his front side. (*Id.*). Officer Fjetland stopped Roberts and requested his ID. (*Id.*). While Roberts retrieved his ID, Officer Fjetland noticed an "extremely large fat stack of cash" in his wallet. (*Id.* at 6–7). Officer Fjetland explained to Roberts that he stopped him because he suspected him of dealing drugs. (*Id.* at 7). Officer Fjetland conducted a pat down of Roberts for weapons, did not discover anything, and proceeded to read him his Miranda rights. (*Id.*).

Roberts agreed to talk with Officer Fjetland. (*Id.*). He denied selling any drugs and claimed that the cash came from selling cars on the West Coast. (*Id.*). Officer Fjetland proceeded to seize Roberts' backpack, satchel, and wallet. (*Id.*). Officer Fjetland told Roberts that he was free to go and could retrieve his belongings after a search warrant was complete. (*Id.*). The search warrant was applied for and granted by Montana State District Court Judge Harada. (*Id.*). Officer Fjetland discovered fentanyl pills, fentanyl powder, cocaine, Xanax pills, and a 9mm Taurus pistol. (*Id.* at 8).

## II.    Legal Standard

The Fourth Amendment protects the right to be free from unreasonable searches and seizures.  The Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)).  If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence seized as a result" of the unconstitutional actions of law enforcement "must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

## III.    Discussion

Roberts argues that Officer Fjetland lacked the reasonable suspicion necessary to conduct an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  (Doc. 23 at 2).  Roberts contends that there was no evidence that tied him to drug transactions, and Officer Fjetland only observed innocuous behavior on July 3, 2024.  (*Id.* at 15).  Further, that the informant's description of a black male in Billings, Montana, wearing a satchel and spending time in a general area is not sufficient to trigger a *Terry* stop.  (*Id.*).  The Government contends that Officer Fjetland had reasonable suspicion that Roberts was engaged in drug trafficking based on the information

4

provided by a known confidential source, which was "extremely specific." (Doc. 29 at 6). The source described where Roberts dealt drugs, where he stored drugs, and informed police that Roberts had moved to a new location on the day of the stop. (*Id.*). In his reply Roberts argues that the Government mischaracterizes the information as "extremely specific" because the informant only provided information about Roberts general whereabouts and a generic description of a person who the police believed to be Roberts. (Doc. 31 at 2).

Under *Terry*, a police officer may conduct a brief, investigative stop of an individual if the officer has reasonable suspicion that the "person·apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 499 U.S. 411, 417–18 (1981)). The Court examines the "totality of the circumstances" to determine whether a detaining officer has a "particularized and objective basis" for suspecting criminal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). The officer must have specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). "The quantum of

proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).

Law enforcement may rely on a source's information as a basis for establishing reasonable suspicion. *Illinois v. Gates*, 462 U.S. 213, 242 (1983). When considering whether a source's tip is sufficient to support a finding of reasonable suspicion, the Court "must employ a 'totality-of-the-circumstances approach' that takes into consideration the informant's 'veracity' or 'reliability' and his 'basis of knowledge.'" *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 238). In the Ninth Circuit, courts consider four factors that bear on a tip's reliability and veracity: (1) whether the informant is known, rather than anonymous; (2) whether the informant has a proven track record of reliability, as opposed to an unproven informant; (3) whether the informant reveals the basis for their knowledge; and (4) whether the tip provides "detailed predictive information about future events that is corroborated by police observation." *Id.* at 907–08.

Here, the first factor favors the Government as the tip was made by a known confidential informant, Informant #240627. Confidential informants are generally understood to be more reliable than an anonymous tipster. *United States v. Costa*, 264 F. App'x 564, 567 (9th Cir. 2008).

The second factor favors Roberts because there is a lack of evidence supporting the confidential informant's reliability. Courts do not accept an affiant's unsupported assertion that a source is reliable. *See United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000); *United States v. Reddrick*, 90 F.3d 1276 (7th Cir. 1996). At the suppression hearing, Officer Fjetland testified that the informant had provided reliable information in other cases. However, no evidence was presented to the Court to verify this claim. Since the Court does not accept an affiant's unsupported assertion that an informant is reliable, the second factor weighs in favor of Roberts.

The third factor favors Roberts. An "informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip—how the informant came to know the information." *Rowland*, 464 F.3d at 908. At the suppression hearing, Officer Fjetland testified that the informant never told him how he learned that Roberts was selling drugs. Due to the lack of evidence supporting the informant's basis of knowledge, the third factor weighs in favor of Roberts.

Last, the fourth factor favors Roberts as the source did not provide any "predictive information about future events." A tip that contains a "range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted" bolsters the reliability of the tip. *Alabama v. White*, 496 U.S. 325, 332 (quoting *Gates*, 462 U.S. at 245). Anyone can predict facts existing at the time of the tip; what is important is

7

the tipster's ability to predict the respondent's future behavior because it demonstrates inside information and a special familiarity with the defendant's affairs. *Id.*

Here, Officer Fjetland only corroborated easily obtained facts and conditions existing at the time of the tip. On July 3, 2024, the informant told police that Roberts: (1) had moved to the apartments behind Garfield Elementary; (2) always carried a black satchel bag; and (3) that the black satchel bag contained illegal drugs that Roberts is trafficking. On that day, Officer Fjetland drove towards the Garfield School to identify Roberts' whereabouts. Officer Fjetland observed a black male, matching Roberts' description, walking eastbound on 2nd Ave. S, and wearing a black backpack and black satchel bag. Officer Fjetland did not observe Roberts engaged in any criminal activity, including possessing or selling drugs, before detaining him.

The only predictive information provided by the informant was that Roberts would be trafficking drugs, but Officer Fjetland failed to verify this information before detaining Roberts. Officer Fjetland was only able to corroborate where Roberts lived and what he was wearing. Further, based on Officer Beechie's previous encounter with Roberts, there was not a reasonable certainty that his bags contained controlled substances. On April 10, 2024, no controlled substances were detected when Officer Beechie had a K9 sniff performed on Roberts' bag.

8

Weighing all the factors, under a totality of circumstances analysis, the Court concludes that the tip was not sufficient to support a finding of reasonable suspicion. Although the confidential informant was known to Officer Fjetland and according to him had provided credible information in the past, the informant did not reveal the basis of their knowledge, nor did they provide any predictive information about future events. Officer Fjetland only verified "innocent" information that could be consistent with both legal and illegal activity. Officer Fjetland did not have any specific, articulable facts that would have formed the basis for suspecting Roberts was engaged in criminal conduct when he detained Roberts. Thus, without other bases to support a finding of reasonable suspicion, the Court finds that Officer Fjetland violated Roberts' Fourth Amendment rights when he detained him on July 3, 2024.

The fruit of the poisonous tree doctrine requires the Court to suppress all evidence obtained subsequent to a violation of the Fourth Amendment because such evidence is tainted by illegality and is inadmissible. *Morales*, 252 F.3d 1070. Since Officer Fjetland did not have the reasonable suspicion necessary to conduct a *Terry* stop, he violated Roberts' Fourth Amendment rights. Therefore, all evidence obtained after the stop was initiated must be suppressed.

**IV.     Conclusion**

The Court finds Officer Fjetland violated Roberts' Fourth Amendment

Rights when he conducted a *Terry* stop without sufficient reasonable suspicion.

Accordingly, any evidence seized from Roberts must be suppressed.

IT IS HEREBY ORDERED that Defendant Edgar Jajuan Roberts' Motion to

Suppress (Doc. 20) is GRANTED.

DATED this 22nd day of November, 2024.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge